**In re Allan Clifford BERKHIMER, District Justice In and For; Magisterial District 47–3–06; Cambria County.**

### No. 1 JD 03.

Court of Judicial Discipline
of Pennsylvania.

May 20, 2003.

Before: Honorable RALPH J. SPOSATO, P.J., Honorable BONNIE B. LEADBETTER., Honorable SAL COGNETTI, JR., Honorable ROBERT P. HORGOS, Honorable MICHELE O'LEARY, Honorable DEBBIE O'DELL SENECA, Honorable JAMES E. BEASLEY, Honorable JOSEPH A. HALESEY.

## ORDER

PER CURIAM.

AND NOW, this 20th day of May, 2003, based upon the Conclusions of Law, it is hereby ORDERED:

That, pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact and Conclusions of Law be and it is hereby filed, and shall be served on the Judicial Conduct Board and upon the Respondent,

That, either party may file written objections to the Court's Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party,

That, in the event that such objections are filed, the Court shall determine whether to entertain oral argument upon the objections, and, if so, issue an Order setting a date for such oral argument, and

That, in the event objections are not filed, the Conclusions of Law shall become final, and this Court will issue an Order setting a date, pursuant to C.J.D.R.P. No. 504, for a hearing on the issue of sanctions.

BEASLEY, J.

## I. *INTRODUCTION*

The Judicial Conduct Board ("Board") filed a Complaint with this Court on January 2, 2003 against District Justice Allan Clifford Berkhimer ("Respondent"). The Complaint consists of five counts based upon allegations that the Respondent had improperly contacted a police officer about a criminal case the officer had filed in another district court, in which the officer had charged the defendant with Driving Under the Influence ("DUI").

The Board has charged that Respondent's conduct subjects him to discipline under the Pennsylvania Constitution, Article V, § 18(d)(1), for the following reasons:

1. The Respondent has violated Rule 2(A) of the Rules Governing Standards of Conduct of District Justices, which provides:

   A district justice shall respect and comply with the law and shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. A district justice shall not allow his family, social or other relationships to influence his judicial conduct or judgment. He shall not lend the prestige of his office to advance the private interest of others, nor shall he convey or permit others to convey the impression that they are in a special position to influence him (Count 1),

2. The Respondent has violated Rule 4(A) of the Rules Governing Standards of Conduct of District Justices, which provides:

   A district justice shall be faithful to the law and maintain competence in it. He shall be unswayed by partisan interests, public clamor or fear of criticism (Count 2),

3. The Respondent has violated Rule 4(D) of the Rules Governing Standards of Conduct of District Justices, which provides; *inter alia:*

A district justice shall ... except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding (Count 3),

4. The Respondent has violated Article V, § 18(d)(1) of the Pennsylvania Constitution, which provides:

A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for ... misconduct in office ... or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute, whether or not the conduct occurred while acting in a judicial capacity or is prohibited by law; or conduct in violation of a canon or rule prescribed by the Supreme Court (Count 4), and

5. The Respondent has violated Article V, § 17(b) of the Pennsylvania Constitution, by violating Rules 2A, Rule 4A and/or Rule 4D of the Rules Governing Standards of Conduct of District Justices (Count 5).

The Board and the Respondent have filed Stipulations of Fact in Lieu of Trial under C.J.D.R.P. No. 502(D)(1), and a Waiver of Trial. The Court accepts those Stipulations of Fact in pertinent part, recited below, as the facts necessary for the disposition of this case.

## II. *FINDINGS OF FACT*

1. The Board is empowered by Article V, § 18 of the Constitution of the Commonwealth of Pennsylvania to file formal charges alleging misconduct on the part of justices, judges, or justices of the peace, and to present the case in support of the formal charges before the Pennsylvania Court of Judicial Discipline.

2. The Respondent commenced his service as District Justice serving Magisterial District 47–3–06, on or about January 4, 1988 and continues to hold office to this date.

3.1 On or about October 12, 2001, Jeremy I. Kosmac (hereinafter referred to as "Kosmac"), a part-time police officer with the Portage Borough Police Department, filed a criminal complaint to docket number CR–306–01 against Dean George, an employee of Ronald Young, owner of the R.J. Young Construction Company, charging George with Driving Under the Influence, a violation of 75 P.S. § 3731(a)(1,4), a misdemeanor of the second degree. George had been operating his motor vehicle while the amount of alcohol in his blood was .26%, as determined by the results of a consensual blood test performed by qualified medical personnel at Conemaugh Valley Memorial Hospital, Johnstown, PA. A copy of the Criminal Complaint is attached as Exhibit A to the Stipulations of Fact.

3.2 At all times relevant to the Stipulated conduct herein, Jeremy I. Kosmac was 19 years old (DOB: November 13, 1981) and a part-time police officer with the Portage Borough Police Department, having commenced working in such capacity on July 10, 2001.

4. A preliminary hearing in the matter of *Commonwealth of Pennsylvania v. Dean D. George,* was scheduled to be heard by District Justice Galen F. Decort (Magisterial District 47–3–03) on November 24, 2001.

5. At some date prior to November 24, 2001, Ronald Young advised Respondent that he had learned that his employee, Dean D. George, was arrested and charged with Driving Under the Influence and he further informed the Respondent that a preliminary hearing was scheduled before District Justice Decort; he needed his employee, George, for a major construction job in the Pittsburgh area; and that his employee could not afford to lose his driv-

er's license as a result of a DUI conviction. Young asked the Respondent to 'help him out,' or words to that effect. Respondent chastised Mr. Young for approaching him in this manner.

6. At an unknown date prior to November 24, 2001, and after the conversation between the Respondent and Ronald Young (see Paragraph Five (5)), the Respondent approached Officer Kosmac and discussed the charges against Dean George pending before District Justice Decort in a manner understood to effectuate a specific outcome.

7. On November 24, 2001, Kosmac and Dean D. George appeared before District Justice Galen F. Decort for the preliminary hearing. Kosmac advised District Justice Decort that he was withdrawing the Driving Under the Influence charge against George and substituting two (2) non-traffic summary offences not previously filed-to wit; Public Drunkenness and Disorderly Conduct.

8. Kosmac affixed his signature to the complaint and filed a Withdrawal of the Criminal Complaint form with District Justice Decort. A copy of the Withdrawal is attached as Exhibit B to the Stipulations of Fact.

9. A copy of the non-traffic citations;

    9.1 Citation No. P1435337–1, charging Public Drunkenness (18 P.S. § 5505, a summary offense); and

    9.2 Citation No. P1435338–2, charging Disorderly Conduct (18 P.S. § 5503(a)(4), a summary offense)

are attached as Exhibit C to the Stipulations of Fact.

10. Dean George pled guilty to the two (2) summary offenses and was sentenced by District Justice Galen Decort as follows:

| CHARGE | FINE | COSTS |
|---|---|---|
| Public Drunkenness | $200 | $86.50 |
| Disorderly Conduct | $200 | $ 1.50 (Judicial Computer Project) |
| **TOTAL** | **$400** | $88.00 |

11. Upon learning that the charges against Dean George had been reduced by Officer Kosmac, Portage Borough Police Chief Donald Kehn, who was Officer Kosmac's supervisor, spoke with Respondent by telephone.

12. Subsequently, as a result of the phone call to Respondent by Portage Borough Police Chief Donald Kehn, Respondent spoke with Officer Kosmac a second time. This conversation took place at Respondent's office while Respondent was on call. Officer Kosmac said he felt that Respondent had threatened him concerning Mr. George. Respondent denied ever threatening Officer Kosmac and could not understand why Officer Kosmac felt that way.

### III. DISCUSSION

As noted, the Board has included five counts in its Complaint[1] asserting that

---

1. Actually, the Board has charged Respondent with a total of eight violations, for Count 4 charges him with violating four separate constitutional proscriptions, *viz.*, "misconduct in office," "conduct which prejudices the proper administration of justice," "conduct which brings the judicial office into disrepute," and "conduct in violation of a canon or rule pre-

Respondent's conduct set forth in the Complaint was a violation of five (actually eight, see fn. 1) separate constitutional and ethical precepts, each of which furnishes the basis for the imposition of discipline by this Court. While the Board may have found it expeditious, when drafting the Complaint, to characterize Respondent's conduct eight different ways so as to maximize the likelihood of a violation being found, as in *In re Eagen,* 814 A.2d 304 (Pa.Ct.Jud.Disc.2002), we consider it unnecessary to address all eight asserted violations included in the Complaint.[2] As we said in *In re Eagen:*

> Unlike a criminal case in which the range of penalties is determined by the number of charges and the statutory sentence mandated for each offense upon which there is a finding of guilt, the scope of sanctions available to this Court is not so circumscribed. Any finding by this Court that a judicial officer has violated the Constitution of Pennsylvania or the Code of Judicial Conduct subjects that judge to the full range of appropriate discipline. Furthermore, in exercising our discretion in imposing disciplinary sanction, we are guided not by the number of ways the Respondent's conduct has offended the Constitution or Code, but by the nature of the conduct itself and any mitigating or aggravating circumstances.

*Id.,* at 306–07. Accordingly, since we believe it is clear that the stipulated facts establish that Respondent's conduct was such that prejudices the proper administration of justice, we will not address the

remaining charges, which, if proven, would be merely cumulative.

In Count 4 of the Complaint it is charged that the Respondent has violated Article V, § 18(d)(1) of the Pennsylvania Constitution, which provides:

> A justice, judge or justice of the peace may be suspended, removed from office or otherwise disciplined for . . . conduct which prejudices the proper administration of justice. . . .

In *In re Smith,* 687 A.2d 1229 (Pa.Ct. Jud.Disc.1996) this Court held that:

> Conduct which prejudices the proper administration of justice . . . is conduct which obstructs or interferes with those activities which enable the systematic operation of the courts. The term "systematic operation" encompasses not only the procedures adopted by the courts which aid in functioning, but also the standards of conduct expected of judicial officers in the performance of the work of the courts. Hence, when a judicial officer's conduct departs from the standard expected of judges and has the affect of obstructing or interfering with the systematic operation or normal function of the court, his conduct will have affected the proper administration of the courts.

*Smith, supra,* at 1237.

It is beyond any dispute that when Respondent "approached" Officer Kosmac, the arresting officer, and "discussed the charges against Dean George pending before District Justice Decort in a manner understood to effectuate a specific out-

scribed by the Supreme Court." We mention that this approach to pleading is not conducive to an orderly or expeditious disposition of charges.

**2.** We note that the facts to which the parties have now stipulated are, in some respects, different from those averred in the Complaint

and, thus, it is not clear that the Board considers the stipulated facts to constitute all of the violations charged in the Complaint. Inasmuch as the Board has made no move to withdraw counts under C.J.D.R.P. No. 502(F), we assume that it does.

come," he was "interfering with the systematic or normal functions of the court."[3]

In our opinion in *Smith*, we held that an additional element must be present in order for particular conduct to qualify as conduct "which prejudices the proper administration of justice" under the Constitution. We said:

> A judicial officer who engages in conduct which prejudices the proper administration of justice would have the added element of a mental state in which he or she not only knew that the conduct at issue consisted of some neglect or impropriety, *but also acted with the knowledge and intent that the conduct would have a deleterious effect. upon the administration of justice, for example, by affecting a specific outcome.* (emphasis added)

*Id.* at 1238. See, also, *In re Trkula*, 699 A.2d 3, 8 (Pa.Ct.Jud.Disc.1997).

In this case, it is stipulated that Respondent's purpose in contacting Officer Kosmac was "to effectuate a specific outcome." (Findings of Fact No. 6.) Thus, there is no doubt that Respondent intended that his contact with Officer Kosmac would have a deleterious effect on the administration of justice.

## IV. CONCLUSIONS OF LAW

1. Respondent's conduct was such that prejudices the proper administration of justice.

2. Respondent is subject to discipline under Article V, § 18(d)(1) of the Pennsylvania Constitution.

---

3. Although the Stipulations of Fact seem to carefully avoid stating that the discussion of the charges with Officer Kosmac had to do with a reduction of the charges and that the "specific outcome" sought was elimination of

## ORDER

PER CURIAM.

AND NOW, this 15th day of July, 2003, a Sanction Hearing having been held on June 24, 2003, in view of the stipulated evidence and of Respondent's candid admission that his conversation with the arresting officer "crossed the line," and upon consideration of Respondent's faithful and exemplary performance of the duties of his judicial office for over fifteen years, and of his record of unselfish service in the affairs of his community, and in consideration of Respondent's demonstration at the bar of this Court of a deep and sincere regret and embarrassment for the shame which he has inflicted on his office, his family and himself, the Court hereby enters the sanction of reprimand.

LEADBETTER, J., files a dissenting opinion.

Dissenting Statement of Judge LEADBETTER.

I must respectfully dissent from the sanction order imposed by the court in this matter. Based upon facts to which the parties stipulated, we found in our decision of May 20, 2003:

> It is beyond any dispute that when Respondent "approached" Officer Kosmac, the arresting officer, and "discussed the charges against Dean George pending before District Justice Decort in a manner understood to effectuate a specific outcome," he was "interfering

the DUI charge, it is perfectly clear that that was the case, for, after the discussion, Officer Kosmac did reduce the charges and did eliminate the DUI charge.

with the systematic or normal functions of the court."[3]

[3] Although the Stipulations of Fact seem to carefully avoid stating that the discussion of the charges with Officer Kosmac had to do with a reduction of the charges and that the "specific outcome" sought was elimination of the DUI charge, it is perfectly clear that that was the case, for, after the discussion, Officer Kosmac did reduce the charges and did eliminate the DUI charge.

Opinion at p. 24.[1]

Although there may be more egregious examples than this one, I can think of few infractions of the judicial rules more serious than that of a judge using the authority of his office to influence the result in a pending case. In my judgment when such conduct is established, substantial sanctions are not only merited but are necessary to maintain public confidence in the integrity of the judiciary.

Accordingly, I would impose a suspension of at least ninety days without pay.

1. Having admitted this conduct, Respondent attempted at the sanction hearing to paint the conversation as an innocent one during which he thoughtlessly "crossed the line" by expressing sympathy for Mr. George. I found this testimony to be wholly incredible, and at all events contrary to his specific admission and this court's factual finding.